UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN DAVID HUMMERT, | : | CIVIL NO. 1:21-CV-00849 |
| | : | |
| Petitioner, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| WARDEN ERIC TICE, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

## I. Introduction.

In 2004, Charlene Hummert's ("Charlene") body was found in the back of her Land Rover.  In this habeas corpus case, Brian Hummert ("Hummert"), Charlene's husband, is challenging his conviction from the Court of Common Pleas of York County, Pennsylvania for the murder of Charlene and for hindering apprehension or prosecution.  Hummert claims that his conviction violates the Double Jeopardy clause because it was obtained after his initial conviction for Charlene's murder was overturned.  Hummert further claims that he was denied due process and effective assistance of counsel.  And Hummert claims that his conviction was obtained through prosecutorial misconduct and governmental interference.  Hummert also argues that his conviction was obtained only after inordinate delay.  For the reasons discussed below, we will deny Hummert's petition for a writ of habeas corpus.

## II.  Background and Procedural History.

Hummert is currently serving a life sentence after being convicted of first-degree murder and hindering apprehension or prosecution. *Commonwealth v. Hummert*, No. 1549 MDA 2012, 2013 WL 11253455, at *1 (quoting the trial court opinion).  This matter comes before the court after 19 years of extensive litigation. *See id.*  We consider this motion after receiving the parties' consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). *Doc. 25*.

Charlene was killed on March 21, 2004. *Commonwealth v. Hummert*, 2013 WL 11253455, at *1 (quoting the trial court opinion).  Hummert was arrested for her murder—and other connected offenses[1]—on November 3, 2004, and arraigned on January 1, 2005. *Id.* (quoting the trial court opinion).  Though Hummert initially pleaded guilty to third-degree murder and was sentenced to 240–840 months in prison, the trial court later found that this guilty plea was a product of ineffective assistance of counsel and, accordingly, allowed Hummert to withdraw his guilty plea. *Id.* (quoting the trial court opinion).  Hummert thus proceeded to a jury trial. *Id.* (quoting the trial court opinion).  This jury convicted Hummert and a judge sentenced him to life in prison without parole. *Id.* (quoting the trial court opinion).

---

[1] Hummert was arrested for "Criminal Homicide, Hindering Apprehension or Prosecution, Obstructing Administration of Law or other Governmental Function, Tampering with or Fabricating Physical Evidence and False Reports to Law Enforcement Authorities." *Id.* (quoting the trial court opinion).

2

The Superior Court affirmed this sentence on appeal but, on November 8, 2008,

the PCRA court "granted a New Trial due to the Commonwealth's failure to make

full and complete disclosures." *Id.* (quoting the trial court opinion).  The Superior

Court affirmed this decision on appeal. *Id.* (quoting the trial court opinion).

"The matter was returned to the Lower Court for a new trial." *Id.* at *2

(quoting the trial court opinion).  Prior to trial, Hummert filed a motion to dismiss

based in part on an argument that proceeding with this trial would violate the

double jeopardy clause. *Id.* at *2 (quoting the trial court opinion).  The court

denied this motion.[2]  The second jury trial, therefore, proceeded and, on May 22,

2012, Hummert was again found guilty of first degree murder and hindering

apprehension or prosecution. *Id.* (quoting the trial court opinion).  The Superior

Court upheld his conviction on appeal, *id.*, and the Supreme Court denied appeal,

*Commonwealth v. Hummert*, 625 Pa. 634, 89 A.3d 660 (Pa. 2014).

Hummert, a state prisoner, began this action on March 18, 2021, by filing a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[3]  Hummert

brings the petition based on seven grounds: (1) violation of the Fifth Amendment

---

[2] The Court issued an order withdrawing the Obstruction of the Administration of Law charge during this stage in the litigation. *Id.* at *2 (quoting the trial court opinion).

[3] Hummert originally filed this petition in the United States District Court of the Western District of Pennsylvania. *See docket.*  The court granted the respondent's motion to transfer venue to this court. *Doc. 5, 7.*

Double Jeopardy clause as incorporated to the states by the Fourteenth Amendment; (2) violation of his due process protections "under the [Six]th and [Fourteen]th Amendments of the U.S. Constitution"; (3) "prosecutorial misconduct and fraud upon the court"; (4) ineffective assistance of counsel; (5) inordinate delay; (6) governmental interference; and (7) cumulative ineffective assistance of counsel. *Doc. 1* at 5–16.   Hummert fails to identify the remedy he seeks in his petition, but he simultaneously filed a brief in support of his petition and, in this document, he requests that "this case be remanded back for a new trial due to the egregious amount of ineffective assistance of counsel Petitioner cumulatively received." *Doc. 2* at 37.  But Hummert further argues that "Double Jeopardy should attach" such that a second trial would not be proper and he should, instead, be released. *Id.*

The respondent argues that this Court should dismiss Hummert's petition because a majority of the claims were procedurally defaulted and the remaining claims must fail on the merits. *Doc. 27.*  Hummert filed a reply which he titles "objections and traverse" in which he objects to, among other things, (1) the respondent using the term "defendant" for Hummert rather than petitioner; (2) the reproduced record which he characterizes as "incomplete" and "biased"; (3) the respondent's statement of the case because it presented as fact allegations that were not, according to Hummert, established by the evidence; and (4) the respondent's

4

characterizations of his claims as waived or not exhausted. *Doc. 32* at 1–6. He further argues that each of his claims, aside from his double jeopardy claim, "have IAC [Ineffective Assistance of Counsel] issues[,]" and that finding at this juncture that his claims are procedurally defaulted would be to make his right to effective assistance of counsel "for not [*sic.*]." *Id.* at 7. Hummert specifically argues that any failure to exhaust his claims should be excused, as he was represented by counsel during the PCRA process and "was told repeatedly by counsel, that they had final say with what was to be raised and how it was going to be raised[,]" and that counsel "could not nor [*sic.*] would not raise U.S. Constitutional violation issues in state court." *Id.* at 7. Upon review of the record and the parties' filings, we ordered the respondent to submit a supplement to the record. *Doc. 36.* The respondents complied. *Doc. 37.* This matter is now ripe for our review.

## III.  Discussion.

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). When a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal

remedy is a writ of habeas corpus." *Id.* at 500.  Where Hummert presented the

claims at issue here to the state courts, and the state courts addressed those claims

on the merits, we review the claims under the deferential standard of 28 U.S.C. §

2254(d).  We begin by dismissing claims that are moot.  We then turn to

addressing the claims that the respondents claim have been procedurally defaulted.

We finally turn to a discussion of the merits of the claims that we find have not

been procedurally defaulted.

### A.  All claims based on alleged errors prior to the second trial are moot.

Hummert's habeas corpus petition contains seven grounds for relief.  Within

many of these grounds, however, Hummert identifies multiple claims.  Some of

these claims are based on alleged errors in his first trial or, even earlier, in his

initial guilty plea.  Hummert alleges that the withholding of letters from a

"purported informant" and of the coroner's report violated his due process rights,

citing the Sixth and Fourteenth Amendments. *Doc. 1* at 7.  Hummert states that the

informant letters were withheld "at [his] first trial" and the coroner's report was

withheld "from both trials['] discovery." *Id.*  Hummert also claims his due process

rights were violated when the Commonwealth coerced him to plead guilty to third

degree murder. *Id.*  Hummert similarly alleges that he was subjected to

prosecutorial misconduct and "fraud on the court" when the prosecutor withheld

exculpatory evidence from discovery, including the aforementioned informant
letters during the first trial and the coroner's report during both trials. *Id.* at 8.
Further, according to Hummert, he also received ineffective assistance of counsel
at both trials when his trial attorneys failed to obtain the coroner's report (*id.* at
10), and when his attorneys failed to object—or, when they did object, failed to do
so properly—to the Commonwealth's misrepresentations to the court during both
of Hummert's trials, as well as each of his direct appeals, and his first PCRA (*id.* at
11). The respondents argue that these claims are moot. *Doc. 27* at 19, 20, 21, 24.
Insofar as these claims are based on proceedings other than Hummert's second
trial, we will dismiss them, as discussed below.

 The Superior Court, upon review of the PCRA petition, found similar claims
moot, explaining:

> Preliminarily, we note that whatever claims Appellant may
> have concerning his first trial and earlier PCRA petition are
> moot, because, when he was granted a new trial, the proverbial
> slate was wiped clean. *See Commonwealth v. Oakes*, 392 A.2d
> 1324, 1326 (Pa. 1978) ('grant of a new trial wipes the slate
> clean of the former trial"); *Commonwealth v. A.G.*, 955 A.2d
> 1022, 1024 (Pa. Super. 2008) (same).

*Doc. 27-1* at 1558. We agree with the Superior Court on this matter and find that
claims based on Hummert's guilty plea or first trial are moot, as it is the second
trial that led to the conviction at question here. *See McDaniels v. Winstead*, Civil
Action No. 11-5679, 2012 WL 10997816, at *12, n.12 (E.D. Pa. Oct. 12, 2012),

*report and recommendation adopted in part and denied in part*, ("Initially, I note that Ms. McDaniels' complaints about counsel's performance during her first trial are moot.  It is the second trial that led to her conviction and judgment of sentence.").  Accordingly, we will dismiss Hummert's claims of error in his first trial and guilty plea.  Where Hummert's claims reference "both trials," going forward we will only consider the errors alleged to have occurred during the second trial.

### B.  Exhaustion and Procedural Default.

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  One of these rules is that a state prisoner must exhaust available state remedies before filing a petition for habeas corpus in federal court. 28 U.S.C. § 2254(b) and (c).  The exhaustion requirement serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal

law, the state courts should have the first opportunity to review this claim and provide any necessary relief."). "The exhaustion rule also serves the secondary purpose of facilitating the creation of a complete factual record to aid the federal courts in their review." *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995). A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies. *O'Halloran v. Ryan*, 835 F.3d 506, 508 (3d Cir. 1987). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.[4]

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case

---

[4] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell,* 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*  Although to meet the fair-presentation requirement, a petitioner need not cite '"book and verse"' the federal constitution, "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard*, 404 U.S. at 278.  "A petitioner can 'fairly present' his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007).

"If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused." *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (citations omitted); *see also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'"). Such a claim is procedurally defaulted, rather than unexhausted. *McCandless*, 172 F.3d at 260.  A procedural default occurs when a prisoner's claim is barred from consideration in the state courts by an "independent and adequate" state procedural

10

rule. *Martinez*, 566 U.S. at 10.  A procedural default generally bars a federal court from reviewing the merits of a habeas claim that the prisoner procedurally defaulted in state court. *Munchinski v. Wilson,* 694 F.3d 308, 332 (3d Cir. 2012). "Grounded in principles of comity and federalism, the procedural default doctrine prevents a federal court sitting in habeas from reviewing a state court decision that rests on a state law ground 'that is sufficient to support the judgment,' when that state law ground 'is independent of the federal question and adequate to support the judgment.'" *Id.* at 332–33 (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  "In such situations, 'resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.'" *Id.* at 333.

In the case at hand, Hummert raised the following claims on direct appeal: (1) sufficiency of the evidence; (2) the denial of his challenge of a juror for cause; (3) the admission of "a photograph purporting to be the hand of the victim"; (4) the denial of his motion for a mistrial after the Assistant District Attorney's closing argument; and (5) the trial court's refusal to read three of his requested points for charge. *Doc. 27-1* at 1475–76.  And in his PCRA petition and following appeals, Hummert raised the issue of ineffective assistance of counsel based on seven grounds: (1) failing to allege that the prosecutor fabricated facts in a filing to the court; (2) "[f]ailing to request a jury instruction that life means life"; (3) "[f]ailing

to appeal an undecided suppression issue"; (4) "[f]ailing to challenge discrepancies in [a detective's] testimony"; (5) "[f]ailing to challenge the inconsistent testimony of [a] Commonwealth witness"; (6) "[f]ailing to object [to] the chain of custody in that [Hummert] never consented to stipulating to the chain of custody"; and (7) "[f]ailing to pursue an alibi based upon the time of death which was in the complete coroner's report which was not provided to the defense prior to trial[.]" *Id.* at 1557–58.  Hummert, therefore, exhausted the above issues.  The question remains, then, which claims Hummert raises in the instant habeas corpus petition and if they are fairly characterized as having been raised before the state court.

### 1. The claims that were raised in neither the direct appeal nor the PCRA processes are procedurally defaulted and no exception applies.

Hummert claims that the Commonwealth fabricated evidence and suborned perjury, thereby violating his due process protections, citing the Sixth and Fourteenth Amendments. *Doc. 1* at 7.  Hummert also claims that by suborning perjury and fabricating evidence, the Commonwealth committed prosecutorial misconduct and fraud upon the court. *Id.* at 8.  Hummert further claims that "the inactions of appointed coun[s]el, the Commonwealth[,] and the Courts delayed petitioners case [and] the delay was inordinate in nature." *Id.* at 13.  Hummert also claims that his conviction was the product of governmental interference because,

among other things, "[t]he Commonwealth has modified it's theory of the crime since Petitioner was able to present on the record a copy of the Coroner's Report[.]" *Id.* at 14. And Hummert brings a claim for cumulative ineffective assistance of counsel, based on "individual actions [which] may not have risen to the level of ineffective assistance of counsel by themselves, but add[ed] together, the cumulative nature should rise to the level of proof needed for ineffective assistance of counsel." *Id.* at 16. Finally, according to Hummert, he also received ineffective assistance of counsel because his counsel failed to obtain the coroner's report,[5] "failed to challenge [the] validity of [the] UPC seals[,]" "failed to

---

[5] Hummert claims:

> I inquired of both trial counsel prior to [the first and second] trials, as to any reports from the coroner's office. I was told by both counsels that they had checked discovery [and] no report was present and they inquired with [the district attorney] and were informed "no such report existed." With this report it brings up issues as to time of death thus alibi defenses, composition of [illegible] thus chain of custody, [time of death] also could be used to challenge video.

*Doc. 1* at 10. We construe this claim as alleging that his counsel's failure to obtain the coroner's report from the Commonwealth constituted ineffective assistance of counsel causing Hummert to be unable to raise certain defenses. In Hummert's own words: "[I]f counsel would have obtained the coroner's report from the York County Coroner's Office, . . . counsel would have been able to raise reasonable doubt[.]" *Doc. 2* at 16. Hummert thus briefed the issue only of failure to obtain the coroner's report and brought up alibi defenses as an explanation of the significance of such failure. Such a claim, as discussed below, is not exhausted.

The respondents briefed this issue on the merits due to the petitioner's previous claims in state court regarding alibi defenses. *See doc. 27* at 27. An ineffective-assistance-of-counsel claim for failure to raise an alibi defense was exhausted, and the Superior Court found that such a claim failed, reasoning "[e]ven

challenge [the] validity of 'stalking' pictures," and failed to raise the issue of the Commonwealth misrepresenting, mischaracterizing, misquoting, and misciting evidence. *Id.* at 10.

Each of these issues were not presented to the state court and can no longer be presented to the state court, because the time to file a PCRA petition has passed and no exception to that time period is present. *See* Pa. C.S. § 9545 ("[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). These claims are, therefore, procedurally defaulted.

There are, however, exceptions to the bar on consideration of procedurally defaulted claims, *Martinez*, 132 S.Ct. at 1316, which requires us to further consider Hummert's claims of fabrication of evidence and subornation of perjury. A federal court may consider the merits of a procedurally defaulted habeas claim in two situations: (1) the petitioner establishes cause for the default and actual prejudice

---

if the jury found [the proposed alibi] wholly credible, then [Hummert] still could have had time to kill the victim at 7:00 a.m., to leave for work by 7:15 a.m., and to arrive at work by 7:45 a.m." *Doc. 27-1* at 1566. And Hummert thus "failed to establish that there was a reasonable probability of a different outcome had second trial counsel 'pursue[d]' this 'alibi.'" *Id.* While we note that we see no apparent flaw in the state court's reasoning, we do not reach this question because Hummert did not raise the issue of failure to raise alibi offenses but instead failure to obtain the coroner's report, noting that such a report may have aided alibi defenses in turn. This is a critical difference and we cannot say that Hummert "fairly presented" such a claim to the state court.

because of the alleged violation of federal law; or (2) the petitioner demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "To show cause and prejudice, 'a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements.'" *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (quoting *Coleman*, 501 U.S. at 753).  "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime by presenting new evidence of innocence." *Keller v. Larkins*, 251 F.3d 408, 415–16 (3d Cir. 2001) (citation omitted).

Here, Hummert does not present new evidence of innocence.  Hummert's procedural default, therefore, will only be excused if he establishes cause and prejudice.  Hummert explains his reasons for procedural default as a choice by counsel not to argue certain issues. *See doc. 1* at 7 ("counsel did not want to argue some of the above points or stated they could not be reargued since I received relief in form of [a] new trial after [the first] trial"), 9 ("counsel stated they could not or would not raise some of these issues"), 10 ("counsel refused or if they did bring up [a] challenge did so in a nonzealous [*sic.*] manner"), 15 ("counsel refused to bring up issue in appeals to PCRA").  Hummert also explains that his claims for inordinate delay and governmental interference occurred during the post-

15

conviction proceedings, though he does not explain why he did not bring the claims to the state court through appeal or other mechanisms. *See id.* at 13, 14.

To establish "cause" for a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Mere "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray*, 477 U.S. at 488).  Attorney error that rises to the level of a Sixth Amendment violation, however, does constitute cause. *Id.* at 753–54.  "Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." *Id.* at 754.  Thus, because there is a constitutional right to effective assistance of counsel on direct appeal, "an attorney's errors during an appeal on direct review may provide cause to excuse a procedure default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner  has been denied fair process and the opportunity

to comply with the State's procedures and obtain an adjudication on the merits of his claims." *Martinez v. Ryan*, 566 U.S. 1, 11 (2012).

Hummert neither specifies which attorneys failed to raise certain issues nor at what stage—direct appeal or PCRA—he sought to raise these issues. Even if he is alleging that his appellate counsel refused to raise the issues, his allegations do not rise to the level of ineffective assistance of counsel. Accordingly, we will dismiss the following claims: (1) Hummert's claims that the Commonwealth violated his due process protections and rights to be protected from prosecutorial misconduct and fraud upon the court based on the Commonwealth allegedly suborning perjury and fabricating evidence (*doc. 1* at 7, 8); (2) Hummert's claim of inordinate delay (*id.* at 13); (3) Hummert's claim of governmental interference based on the Commonwealth "modif[ying] it's theory of the crime" (*id.* at 16); and (4) Hummert's claim of cumulative ineffective assistance of counsel (*id.* at 14).

The United States Supreme Court has, however, created a narrow exception to the rule set forth in *Coleman* that an attorney's errors in post-conviction collateral proceedings do not constitute cause to excuse a procedural default. *Martinez*, 132 S.Ct. at 1315. The Court in *Martinez* held that a prisoner may establish cause for the procedural default of an ineffective-assistance-of-trial-counsel claim by demonstrating the ineffective assistance of his or her counsel in "initial-review collateral proceedings," which the Court defined as collateral

proceedings that "provide the first occasion to raise a claim of ineffective assistance at trial." *Id.*  The Court declined to hold, however, that there is a constitutional right to counsel in initial-review collateral proceedings. *Id.*  The Court stressed that the rule of *Coleman* continues to apply "except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Id.* at 1319.

In light of *Martinez*, we again consider Hummert's procedurally defaulted ineffective assistance of counsel claims.  Hummert explains his procedural default of these claims by stating "counsel refused or if they did bring up [a] challenge did so in a nonzealous manner." *Doc. 1* at 10.  Again, these allegations do not rise to the level of ineffective assistance of counsel, which requires a petitioner to establish that the representation "fell below an objective standard of reasonableness' and that he was prejudiced by this failure to meet the reasonableness standard. *See Strickland*, 466 U.S. at 687.  Accordingly, we dismiss Hummert's ineffective assistance of counsel claims based on failure to "challenge [the] validity of" the UPC seals and the "'stalking' pictures" and failing to raise the issue of the Commonwealth mischaracterizing the evidence. *Doc. 1* at 10.

**2.  The claims that were raised only in the context of another claim are procedurally defaulted and, again, no exception applies.**

As summarized above, Hummert's PCRA petition was based on several instances of alleged ineffective assistance of counsel. *See doc. 27-1* at 1526. Relevantly, Hummert alleged that his counsel was ineffective for "[f]ailing to object [to] the chain of custody in that [Hummert] never consented to stipulating to the chain of custody" and "[f]ailing to pursue an alibi based upon the time of death which was in the complete coroner's report which was not provided to the defense prior to trial[.]" *Id.*  In the present habeas corpus petition, Hummert claims that the government withheld the coroner's report from his counsel and used a faulty chain of custody of evidence from the first trial in the second trial. *Doc. 1* at 7, 8, 14. Hummert alleges that these actions are examples of prosecutorial misconduct and fraud upon the court, and violated his right to due process and his right to be free from governmental interference. *Id.*  The respondents argue, without citing cases, that these claims have not been exhausted, and are therefore procedurally defaulted, because "[w]hile [Hummert] did raise issues related to chain of custody and production of the coroner's report on collateral review, he did so only in the context of his ineffective assistance of counsel claim and not as independent claims." *Doc. 27* at 19–20.

19

To be exhausted, a "federal habeas claim must have been 'fairly presented' to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing *Evans v. Court of Common Pleas, Delaware County, Pennsylvania*, 959 F.2d 1227, 1230 (3d Cir. 1992)). "In addition, the state court must have available to it the same method of legal analysis as that to be employed in federal court." *Id.* (citing *Evans*, 959 F.2d at 1230). "Petitioners who have not fairly presented their claims to the highest court have failed to exhaust those claims." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). And such claims will be procedurally defaulted when, as here, the time to file a state petition has passed and no exception to that time period is present. *See* Pa. C.S. § 9545.

The claims that Hummert presented to the PCRA court are similar to his claims for prosecutorial misconduct, fraud against the court, governmental interference, and violations of due process, but with critical differences. Each of the claims are based on the absence of the coroner's report during the second trial or a challenge to the chain of custody of evidence. But in the PCRA claims, Hummert alleged that his counsel was ineffective for not obtaining the coroner's report or objecting to the chain of custody of evidence. *Doc. 27-1* at 1526. Here, however, Hummert brings fundamentally different claims that require a different

analysis and the application of different legal standards. *See Lambert*, 134 F.3d 506, 513 (3d Cir. 1997) (citing *Evans*, 959 F.2d at 1230).

There are factual and legal differences.  Hummert's habeas claims allege that the Commonwealth *withheld* the coroner's report and *used* the chain of custody of evidence at issue, whereas his PCRA claims alleged that his counsel was ineffective for not *using* the time of death from the coroner's report for an alibi defense and not *objecting* to the chain of custody of evidence. *Compare doc. 1* at 7, 8, 14 *with doc. 27-1* at 1526.  Further, Hummert's habeas claims evokes the questions of whether his due process rights were violated and whether his conviction was a product of prosecutorial misconduct, fraud upon the court, or governmental interference, while his PCRA petition only asked the state court to find that he was provided ineffective assistance of counsel. *Compare doc. 1* at 7, 8, 14 with *doc. 27-1* at 1526.  Accordingly, these claims were not presented to the state court and, because they can no longer be presented, *see* Pa. C.S. § 9545, these claims are procedurally defaulted.

We will, therefore, dismiss as procedurally defaulted Hummert's due process, prosecutorial misconduct, fraud upon the court, and governmental interference claims based upon allegations of withholding the coroner's report and using a disputed chain of custody of evidence.

## C.  Addressing Habeas Claims on the Merits.

Hummert did present the remaining claims to the state courts, and the state courts addressed those claims on their merits.  Thus, we review the clams under the deferential standard of 28 U.S.C. § 2254(d).  We begin by setting forth the standards for addressing habeas claims on the merits.  Then we turn to discuss Hummert's double jeopardy claim followed by a discussion of each of the remaining ineffective-assistance-of-counsel claims.  We conclude that Hummert is not entitled to habeas relief.

## 1.  The Standard for Addressing Habeas Claims on the Merits.

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019).  In addition to overcoming procedural hurdles, a state prisoner must meet exacting substantive standards to obtain habeas corpus relief.  A federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

22

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).

The standard under Section 2254(d) is highly deferential and difficult to meet. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).  It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter,* 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).  State courts are presumed to know and follow the law, *Woods v. Donald,* 575 U.S. 312, 316 (2015), and § 2254(d) "'demands that state-court decisions be given the benefit of the doubt[,]'" *Pinholster,* 563 U.S. at 181 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)).

Under § 2254(d)(1), only the holdings, not the dicta, of the Supreme Court constitute "clearly established Federal law." *Howes v. Fields,* 565 U.S. 499, 505 (2012).  "Furthermore, in determining what is 'clearly established,' Supreme Court decisions cannot be viewed 'at a broad level of generality,' but instead must be viewed on a 'case-specific level.'" *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)).  Thus, "[t]he 'clearly established Federal law' provision requires

23

Supreme Court decisions to be viewed through a 'sharply focused lens.'" *Id*. (quoting *Fischetti*, 384 F.3d at 149).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In other words, "a state court decision is 'contrary to' clearly established law where 'the Supreme Court has established a rule that determines the outcome of the petition.'" *Rosen*, 972 F.3d at 252 (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc)). Thus, "'[i]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Id*. (quoting *Matteo*, 171 F.3d at 888 (italics in original)).

Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413. Because federal habeas relief may be granted only if the "state court's application of clearly

established federal law was objectively unreasonable[,] an incorrect application of federal law alone does not warrant relief." *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001). "The term 'unreasonable' refers not to 'ordinary error' or even to circumstances where the petitioner offers 'a strong case for relief,' but rather to 'extreme malfunctions in the state criminal justice syste[m].'" *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting *Harringto*n, 562 U.S. at 102).

Under the "unreasonable application" clause of § 2254(d)(1), "if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 565 U.S. 65, 72 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). "In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification . . . beyond any possibility for fairminded disagreement.'" *Mays*, 141 S. Ct. at 1149 (quoting *Harrington,* 562 U.S. at 103).

"When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough,* 541 U.S. at 664). "Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably,* it follows

that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Id.* (emphasis in original).

Under the "unreasonable determination of the facts" provision of § 2254(d)(2), the test "is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record." *Roundtree v. Balicki,* 640 F.3d 530, 537–38 (3d Cir. 2011). "[T]he evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication." *Id.* at 538.

"In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard,* 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013). But when the highest state court that considered the claim does not issue a reasoned opinion, we look through that decision to the last reasoned opinion of the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). And we "presume that the

26

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  "But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id*.

"AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022). "Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'" *Id*.  "[R]eview under § 2254(d)(1) is [also] limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U. S. at 181.  Only in certain, narrow circumstances may a habeas petitioner present evidence that was not part of the state-court record. *Shoop*, 142 S. Ct. at 2044.  "Thus, although state prisoners may occasionally submit new evidence in federal court, 'AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id*. (quoting *Pinholster*, 563 U. S. at 186).

## 2. The Double Jeopardy Claim.

Hummert avers that the Commonwealth violated his right to protection from double jeopardy, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. *Doc. 1* at 5.  Hummert explains that he was first tried in September 2006, and found guilty, but a judge "ordered [a] new trial on [October 30, 2008,] due to [his] PCRA that showed a Brady violation and a second time [the C]ommonwealth failed to 'make full and complete disclosures.'" *Id.*  According to Hummert, double jeopardy was violated when he was tried again, in May 2012, and found guilty. *Id.*  The respondent, however, argues that Hummert did not exhaust this claim in state court. *Doc. 27* at 18.  The respondent elaborates:

> Defendant filed a PCRA after his first trial for the purpose of seeking a new trial; he now clearly regrets that decision as he was convicted at the second trial as well.  Regardless, Defendant did not raise this bizarre issue on either direct appeal or PCRA review.

*Id.* Hummert takes issue with this characterization of his argument, explaining that the record "shows that he has a legitimate claim" and that he exercised "due diligence" in raising the issue prior to the second trial. *Doc. 32* at 10–11.

Hummert's discussions of double jeopardy concerns in his direct appeal and PCRA proceedings are confined to argument in his PCRA that his second trial counsel was ineffective for not raising additional grounds to dismiss the second trial as violating double jeopardy. *See doc. 27-1* at 1493, 1497, 1527, 1551.  As

28

discussed above, however, raising a claim within the context of an ineffective-assistance-of-counsel claim does not exhaust the issue with the state court. *See Lambert*, 134 F.3d at 513 (citing *Evans*, 959 F.2d at 1230) ("the state court must have available to it the same method of legal analysis as that to be employed in federal court"). Further, in his PCRA petition, Hummert raised an ineffective assistance of counsel claim and reasoned that alleged prosecutorial misconduct other than that alleged by Hummert in the present habeas petition merited double jeopardy protections. *See doc. 27-1* at 1493, 1497, 1527. We, therefore, conclude that the double jeopardy claim was not exhausted in either the direct appeal or PCRA processes.

Hummert, however, filed a motion to dismiss the second trial based, in part, on the issue of double jeopardy. *Doc. 27-1* at 1433. And when this motion was denied by the trial court, he appealed to the Superior Court. *Id.* And when the Superior Court affirmed, he requested allowance of an appeal to the Pennsylvania Supreme Court, which was denied. *Id.* Hummert argues that this motion to dismiss, therefore, exhausted this claim. The Commonwealth does not address this argument.

In *Briston v. Wholey*, the Third Circuit reviewed the petitioner's motion to dismiss "before the Court of Common Pleas, and his brief on appeal in the Pennsylvania Superior Court," and concluded that, because the petitioner had

"asserted his double jeopardy claim 'in terms so particular as to call to mind' the Fifth Amendment's proscription of double jeopardy" "he fully exhausted his federal double jeopardy claim prior to filing his federal habeas petition." 307 Fed. Appx. 616, 617–18 (3d Cir. Jan. 22, 2009).  Here, Hummert's double jeopardy claim has been fairly presented to the state court through the motion to dismiss and appellate proceedings. *See docs. 37-1–37-16*.  We, therefore, proceed to the merits of the double jeopardy claim.

### i. Double Jeopardy Standards.

The Double Jeopardy Clause of the Fifth Amendment, which provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," U.S. CONST amend. V, "is applicable to the States through the Fourteenth Amendment," *Benton v. Maryland*, 395 U.S. 784, 787 (1969).  "The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982) (citing *United States v. Jorn*, 400 U.S. 470, 483 – 84 (1971) (plurality opinion); *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).  The Supreme Court, therefore, has acknowledged only a limited exception to permitting a second proceeding, finding that even "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even

if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675–76.

### ii. The Superior Court Opinion.

The Superior Court considered Hummert's pretrial motion to dismiss the second trial on appeal. *Doc. 27-1* at 1433. The Superior Court set forth the standard for double jeopardy protections as follows:

> The Double Jeopardy Clause of the Fifth amendment to the United States Constitution commands that "no person shall … be subject for the same offense to be twice put in jeopardy of life or limb. Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. The Pennsylvania Supreme Court has recognized that "the corresponding proscription contained in the Pennsylvania Constitution, Pa. Const. art. 1, § 10, 'involves the same meaning, purpose, and end[ ]'; thus, it has generally been construed as coextensive with its federal counterpart."

*Doc. 37-14* at 4–5 (internal citations omitted) (alterations in original). The Superior Court then concludes, "[b]ecause further discussion by this Court would amount to little more than reiteration of the trial court's Opinion, we adopt the rationale employed in the trial court's Opinion as our own with regard to each of Hummert's claims." *Id.* at 5 (citing Trial Court Opinion, 6/30/10, at 7–16). We thus turn now to the trial court opinion. *See doc. 37-6.*

The trial court explained that "[p]rosecutorial overreaching may result in dismissal of charges pursuant to the prohibitions against double jeopardy[,]" when the misconduct is "designed to provoke a mistrial" or "undertaken in bad faith to prejudice or harass the defendant." *Id.* at 11.  The court then observes that "a mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges" as dismissal is "an extreme sanction to be imposed sparingly and only when blatant prosecutorial misconduct exists." *Id.* at 12 (citing *Commonwealth of Pennsylvania v. Burke*, 566 Pa. 402, 417, 781 A.2d 1136, 1144–1145 (2001)).

The trial court ultimately concluded:

> The record does not support a finding that the prosecutor acted intentionally or in bad faith to deny the Defendant of a fair trial. Moreover, the facts of record supporting a **Brady** violation do not rise to the level of prosecutorial misconduct present in **Moose**, which the Supreme Court described as a "willful violation of Rule 305", [*sic.*] "villainy", [*sic.*] and raised such ethical concerns that it referred the District Attorney to the Disciplinary Board."

*Id.* at 15–16 (citing *Commonwealth of Pennsylvania v. Moose*, 529 Pa. 218, 229, 235, 240, n.12 (1992)).  Accordingly, the Court denied the motion to dismiss on double jeopardy grounds. *Id.* at 16.

32

### iii.  The state court's adjudication was neither contrary to clearly established Federal Law, as determined by the Supreme Court of the United States nor was it an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts.

Hummert has not cited to contrary Supreme Court precedent, nor has he cited to Supreme Court cases applicable to the fact scenario here.  And, as described above, the state court applied standards consistent with the clearly established Federal Law.  Thus, the Superior Court's decision on Hummert's claim of double jeopardy was not contrary to clearly established federal law.  So we turn to whether the state court's decision resulted in a decision that involved an unreasonable application of clearly established federal law, as set forth above, or resulted in a decision on an unreasonable determination of the facts.  We find that the decision did not result in such an unreasonable result.

As set forth above, the Superior Court, through the adoption of the trial court's opinion, found that no exception applied to foreclose the possibility of Hummert constitutionally facing a second trial.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664).  In other words, "[a]ll that matter[s] [is] whether the [Pennsylvania Superior Court], notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown

prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (quoting *Knowles*, 556 U.S. at 123).  Applying this deferential standard, we find that the Superior Court's determination was reasonable.  And, because Hummert has not argued that the Superior Court got the facts wrong, we cannot conclude that the Superior Court's decision was based on an unreasonable determination of the facts.

### 3. The Ineffective-Assistance-of-Counsel Claims.

Hummert alleges that his conviction was, in part, a result of ineffective assistance of counsel. *Doc. 1* at 10–11.  As discussed above, several of these claims are moot or unexhausted.  All that remains is Hummert's ineffective-assistance-of-counsel claim for failing to correct the record when the Commonwealth presented false testimony. *Id.*  During the PCRA proceedings, Hummert raised the following two issues on appeal: (1) "Failing to challenge discrepancies in Detective Loper's testimony regarding the Appellant's height, which was a material issue of fact at Appellant's trial and his testimony regarding the length of the chain alleged to have been used [to kill Charlene] which contradicted other witnesses' testimony"; and (2) "Failing to challenge the inconsistent testimony of Commonwealth witness Carolyn Benish who in the first trial stated that the decedent did not mention the stalker in the two to three months

preceding her death[,] whereas, in the second trial, she testified that the decedent did say she believed someone was stalking her in the months preceding her death." *Doc. 27-1* at 1557 (alteration in original).  Mindful of our obligation to generously construe pro se filings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), we find that Hummert exhausted his claim based on failure to correct false Commonwealth testimony.  We will thus address this claim on the merits.

We begin our discussion of this final claim by setting forth the standards for deciding ineffective-assistance-of-counsel claims.  We next set forth the Superior Court's opinion regarding this claim.  Then, addressing the merits of the claim, we conclude that Hummert has not shown that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Nor has Hummert shown that the decision was based on an unreasonable determination of the facts.  Thus, Hummert is not entitled to habeas relief on this claim.

### i.  Ineffective Assistance of Counsel Standards.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. CONST. AMEND VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the

right to the effective assistance of counsel.'" *Strickland v. Washington,* 466 U.S.

668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

"The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth

Amendment guarantees reasonable competence, not perfect advocacy judged with

the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly

established federal law as to an ineffective-assistance-of-counsel claim is

*Strickland,* which sets forth a two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that

counsel's performance was deficient. 466 U.S. at 687. "*Strickland'*s first prong

sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that

counsel's performance was deficient, the petitioner must establish that "counsel's

representation fell below an objective standard of reasonableness." *Strickland,* 466

U.S. at 688. "Judicial scrutiny of counsel's performance must be highly

deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that

counsel's representation was within the 'wide range' of reasonable professional

assistance," *Harrington*, 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 689), and

"[t]o overcome that presumption, a defendant must show that counsel failed to act

'reasonabl[y] considering all the circumstances[,]'" *Pinholster,* 563 U.S. at 189

36

(quoting *Strickland,* 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington,* 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland,* 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland,* 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 563 U.S. at 189 (quoting *Harrington,* 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner

was not prejudiced without addressing whether counsel's performance was deficient. *Strickland,* 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

### ii.  The Superior Court Opinion.

The Superior Court set forth the three-part standard for ineffective-assistance-of-counsel claims under the PCRA as follows:

> [C]ounsel is presumed to be effective.
>
> To overcome this presumption, a PCRA petitioner must **plead and prove** that: (1) the underlying legal claim is of arguable

merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

A failure to satisfy any of the three prongs of [this] test requires rejection of a claim of ineffective assistance[.]

*Doc. 27-1* at 1559–60 (emphasis and alterations in original) (*Commonwealth v. Medina*, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018)).

The Superior Court did not find inconsistency in the testimony of Carolyn Benish ("Benish"), a friend of Charlene's and a witness in both trials:

[W]e fail to see the inconsistency in Benish's testimony. In his brief, Appellant states: 'At the first trial, [Benish] testified she was not aware that the victim was being stalked; however, at the second trial, she testified the victim had alluded to being stalked.' Appellant's Brief at 19. This assertion is contrary to the record. During the first trial, when Benish was asked if the victim 'ever mention[ed the] existence or possible existence of a stalker[,]" she replied: "Yes." N.T. First Trial at 528. Benish then gave details about her conversation with he victim, who had thought that somebody was following her. *Id.* at 528–29. During the second trial, when asked if the victim indicated to her 'that she thought someone was stalking her in the months before her death[,]' Benish again answered, 'Yes.' N.T. Second Trial at 692. These statements are not in conflict.

*Doc. 27-1* at 1562 (alterations in original). And the Superior Court stated that Hummert failed to "cite to the notes of testimony from" Lieutenant Loper, who investigated Charlene's murder, thereby violating Pennsylvania Rule of Appellate Procedure 2119(c). *Id.*

The Superior Court further found that even if some inconsistency were found in the testimony, "Appellant's ineffectiveness claims relating to these witnesses' testimonies would still fail." *Id.* at 1563.  The court reasoned:

> [Hummert] has failed to establish 'prejudice, to the effect that there was a reasonable probability of a different outcome.' *Medina*, 209 A.3d at 1000. None of these details – [Hummert]'s height, the cable's length, nor the victim's conversations with Benish – were cited in this Court's sufficiency analysis on direct appeal from the second trial. *Hummert*, NO. 1549 MDA 2012, at 4-6.  These particulars thereby were not needed to establish [Hummert]'s guilty, and the outcome of the trial would not have changed even if trial counsel had challenged them.  As [Hummert] has failed to satisfy one of the three prongs of the ineffectiveness test for either his challenges to Lieutenant Loper's or Benish's testimony, both claims fail. *Medina*, 209 A.3d at 1000.

*Doc. 27-1* at 1563.

### iii.  The state court's adjudication was not contrary to clearly established Federal Law, as determined by the Supreme Court of the United States.

Although the Pennsylvania courts use slightly different language to articulate the ineffective-assistance-of-counsel standard, the standard used by the Pennsylvania courts is consistent with the *Strickland* standard.  The Third Circuit "has repeatedly recognized that Pennsylvania's test for ineffective assistance of counsel is consistent with the Supreme Court's decision in *Strickland* because it requires 'findings as to both deficient performance and actual prejudice.'" *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (quoting *Mathias*

*v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017)).  And the Superior Court applied that standard.  Thus, the Superior Court's decision on Hummert's claim of ineffective assistance of counsel was not contrary to clearly established federal law.  So, we turn to whether the state court's decision resulted in a decision that involved an unreasonable application of clearly established federal law, *i.e.*, *Strickland*, or resulted in a decision on an unreasonable determination of the facts.

### iv.  The state court's decision was not an unreasonable application of clearly established federal law.  Nor was it based on an unreasonable determination of the facts.

The state court's adjudication of Hummert's ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland*.  Nor was the state court's decision based on an unreasonable determination of the facts.

As set forth above, the Superior Court concluded that Hummert failed to demonstrate an inconsistency in Benish's testimony and failed to satisfy the prejudice prong of his claim of ineffective assistance of counsel.  The Superior Court explained that the testimony in question from Benish and Lieutenant Loper was not relied upon in its direct appeal sufficiency analysis. *Doc. 27-1* at 1563. Under the "double deferential" standard that applies to a *Strickland* claim evaluated under 28 U.S.C § 2254(d)(1), *Knowles*, 556 U.S. at 123, the Superior

Court's determination in this regard was reasonable.  Further, "[a] state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664).  In other

words, "[a]ll that matter[s] [is] whether the [Pennsylvania Superior Court],

notwithstanding its substantial 'latitude to reasonably determine that a defendant

has not [shown prejudice],' still managed to blunder so badly that every fairminded

jurist would disagree." *Mays*, 141 S. Ct. at 1149 (quoting *Knowles*, 556 U.S. at

123).  Here, the Superior Court has reasonably determined that the failure to

challenge these inconsistencies—to the extent there were, in fact inconsistencies—

does not appear to have prejudiced Hummert.

      Hummert also has not argued that the Superior Court got the facts wrong.

Thus, we cannot conclude that the Superior Court's decision was based on an

unreasonable determination of the facts.

## IV.  Conclusion.

For the foregoing reasons, we will deny Hummert's petition for a writ of habeas corpus, and we will deny a certificate of appealability.  An appropriate order follows.


*<u>S/Susan E. Schwab</u>*
Susan E. Schwab
United States Magistrate Judge